### YOUNG ALLEN v. H. T. ASHBURN ET AL.

Decided November 20, 1901.

**1.—Homestead—Leasehold Interest.**
    . A leasehold interest in land is exempt from execution, when occupied as the homestead of the family.

**2.—Same—Surviving Husband—Ungathered Crops.**
    The surviving husband after death of the other members of the family is still entitled to the homestead exemption; and this includes and protects from execution matured crops grown on but not severed from the soil.

**3.—Same—Gathered Crops.**
    The husband is not entitled, after the death of the other members of the family, to the exemption of personal property secured to the survivors in case of his death by article 2046, Revised Statutes; and gathered crops, though raised on the homestead, are in such case subject to execution.

**4.—Unlawful Levy—Pleading—Demurrer.**
    A petition seeking damages on account of a levy of execution alleged to be unlawful both because made on exempt property and because excessive, is not demurrable for insufficiency in its allegations on the former ground alone.

Appeal from the County Court of McLennan. Tried below before Hon. G. B. Gerald.

Allen sued Ashburn and others and appealed from a judgment in favor of defendants on demurrer.

*Jenkins & Harrison,* for appellant.

KEY, ASSOCIATE JUSTICE.—Appellant brought this action to recover damages for the alleged unlawful levy of an execution upon certain property. Omitting formal parts, his petition reads as follows:

"2. That plaintiff is a married man and the head of a family, and was such on the 1st day of January, 1900, and on the 16th day of October, 1900, and continues to sustain and occupy such relation. That on January 1, 1900, plaintiff's family consisted of himself, his wife, and one child. That on said last date plaintiff rented from D. C. Bolinger, for the period of one year for and during the year A. D. 1900, thirty acres of farm land, situate on said Bolinger farm about eight miles below the city of Waco, on east side of Brazos River, in McLennan County, Texas, and paid said Bolinger therefor a stipulated sum of money. That plaintiff rented said land for a home for himself and

family, and that plaintiff and his family moved upon said land and re-sided thereon during said year, as hereinafter shown, occupying, using, and enjoying the same as a home for himself and family, and culti-vating same as a means of support for himself and family. That plain-tiff's leasehold interest in said land and all crops growing and ungath-ered thereon were exempt from execution and forced sale under the Constitution and laws of this State, by reason of the same being the homestead and place of abode of plaintiff and his family.

"3. That plaintiff planted twenty-four acres of said land in cotton and six acres in corn, and with the assistance of his wife cultivated the same until the same was fully cultivated and laid by preparatory to harvesting and gathering. That about the middle of July, and after said crop of corn and cotton had been fully cultivated and laid by and said corn was matured and ready to be gathered and housed, and while plaintiff was using said corn for bread and stock feed, plaintiff's said wife died, leaving surviving her plaintiff and their said child. That plaintiff and their said child continued residing upon said land and using and occupying same as a homestead for a period of ten days after death of plaintiff's wife, when said child died, leaving plaintiff the sole survivor and constituent of his said family. That at the time of the death of plaintiff's wife and child they were residing upon said land and occupying, enjoying, and using same as a home, and plaintiff continued to reside upon, occupy, use, and enjoy said land as his home until the expiration of his lease, on to wit, December 31, 1900.

"4. That a short time after the death of plaintiff's wife and child, plaintiff gathered the remainder of said corn and placed same in his crib for home consumption. That said corn was all of the corn and forage plaintiff had on hand for home consumption for bread for him-self as the head and survivor of said family and as feed for his stock. That the same was not more than was sufficient for this purpose, and same was needed and necessary for plaintiff's use and home consump-tion, as aforesaid, for the ensuing year, and by reason of these facts said corn was exempt to plaintiff from execution or forced sale by the laws of this State.

"5. That on to wit, October 16, 1900, and while plaintiff was still occupying, using, and enjoying said land as a homestead, and while said cotton was still growing and ungathered upon said land, and said corn, amounting to 150 bushels, was still in plaintiff's crib, as herein-before alleged, and for the purposes alleged, the defendants herein, claiming to act by virtue of an execution issued out of the Justice Court, precinct No. 1, McLennan County, Texas, in cause No. 5618, styled H. T. Ashburn v. John C. Donahoe and Young Allen, on the dockets of said court, and for the sum of $66.25, including costs, un-lawfully, illegally, wrongfully, and maliciously levied upon, seized, and took possession of said 150 bushels of corn in plaintiff's crib and said twenty-four acres of cotton on said land and home of plaintiff while same was standing, ungathered and growing upon said land, and sold

said corn, and growing and ungathered cotton standing upon said land, and the same and the proceeds thereof they appropriated to their own use and benefit, to plaintiffs' damage in the sum of $1000, as hereinafter shown.

"6. That said 150 bushels of corn was well and reasonably worth in the markets of the country and in that community the sum of $75. That said twenty-four acres of cotton land had upon it, matured and maturing, but ungathered, at the date of said seizure, the sum of nine bales of cotton. That had said cotton been prudently and properly gathered it would have and did yield the sum of nine bales of cotton, which said bales were well and truly worth, and the market value of same was the sum of $425. That the amount of ungathered cotton upon said twenty-four acres seized and taken by defendants as aforesaid was well and truly worth the sum of $425.

"7. Plaintiff further alleges that he is and was at the time the matters herein complained of occurred a poor man and was unable to give the bond and security necessary and required by law to enable him to avail himself of the remedies provided by law, by which such unlawful and illegal seizure and sale of his exempt property could have been restrained and prevented, and this fact was well known to defendants at the time. That said seizure and sale was illegal and unlawful and excessive, and covered far beyond the amount of property reasonably necessary to realize a sum of money sufficient to pay and satisfy the execution under and by which defendants claimed to act, and this was well known to defendants. That said exempt property so seized and sold was bought in by the defendants at public outcry for a sum of money more than double the amount called for and required by said execution, and defendants appropriated said exempt property and the entire proceeds of said sale of same to their own use and benefit. That defendants then resold said property and realized out of plaintiff's said exempt property so illegally and unlawfully seized and sold and bought by them, the sum of $500, which said defendants appropriated to their own use and benefit. That at the time of said unlawful and illegal seizure and sale of plaintiff's exempt property, as herein alleged, defendants well knew that the same was not subject to forced seizure and sale to satisfy said execution, and they well knew that the land upon which said ungathered cotton so seized was standing, growing and being grown, was the homestead of plaintiff, and that said corn so seized was all the corn and forage plaintiff had on hand for home consumption, and that same was needed and necessary and was not more than was sufficient for that purpose, and they well knew that all of the property of plaintiff so seized and sold by them was exempt to plaintiff from forced sale and seizure under Constitution and laws of this State. That defendants, with a full knowledge of all the facts hereinbefore set out and alleged, and in utter disregard of plaintiff's legal rights in the premises, and taking advantage of plaintiff's inability to give the required bond to prevent said

illegal seizure and sale, they, the said defendants, did illegally, unlawfully, willfully, maliciously, and oppressively, and with the purpose and intent to injure oppress, and harass plaintiff and to deprive him of the possession, use, and enjoyment and value of his said exempt property and to appropriate same and proceeds thereof to their own use and benefit, seize, take possession of, sell and appropriate to their own use and benefit, plaintiff's said exempt property and the proceeds thereof, by reason of which illegal, unlawful, willful, malicious, and grossly oppressive acts on the part of defendants in the premises, plaintiff has been further damaged in the sum of $500.

"Premises considered, plaintiff prays service upon defendants in terms of the law, and upon hearing of this cause plaintiff do have and recover of and from defendants, judgment for his damages in the sum of $500 actual and $500 exemplary damages, and for costs of this suit, and for such other and further relief, general and special, legal and equitable, as merits of plaintiff's cause may require, and plaintiff will ever pray," etc.

The defendant interposed a general demurrer, and also specially excepted to the petition upon the ground that the averments thereof showed that the property seized was not exempt from forced sale. The demurrer and exceptions were sustained, and the plaintiff declining to amend, his suit was dismissed.

*Opinion.*—The plaintiff's petition stated a good cause of action, and the judgment must be reversed. Although the plaintiff had only a leasehold interest in the land, it was the homestead of himself and family when the crop was planted and raised thereon. Wheatley v. Griffin, 60 Texas, 209; Cullers & Henry v. James, 66 Texas, 494; Brewing Assn. v. Smith, 26 S. W. Rep., 94. By reason of a provision of the Constitution of this State, this homestead right was vested in and remained with the plaintiff after the death of all the members of his family. Blum v. Gaines, 57 Texas, 119; Childress v. Hennessy, 76 Texas, 664.

It has been held by our Supreme Court that matured crops grown upon, but not severed from the homestead, are exempt from forced sale. Coates v. Caldwell, 71 Texas, 19. From these rulings and authorities it follows that the seizure of the cotton, which had not been severed from the plaintiff's homestead, was unlawful, and he was entitled to recover its value. But this is not true as to the corn. It had been severed from the land and placed in the crib, and was subject to forced sale for the plaintiff's debts, unless its exemption while he had a family continued in his favor after the death of the other members of the family. That such is the rule as to the homestead is settled by the decisions above referred to; but they are based upon and find support in a provision of the Constitution which secures to a surviving spouse the right to use the homestead. As to the surviving wife, the same right is secured by statute in reference to personal property exempt to the family.

Batts' Civ. Stats., art. 2046.   But no provision of law, either constitutional or statutory, has been cited, and we have found none, securing the same right to a surviving husband.   There may be expressions in the opinion in Cameron v, Morris, 83 Texas, 14, tending to support such contention; but in that case the husband died first, and therefore his rights as a survivor were not involved.

We are also of the opinion that the petition sets up a good cause of action for an excessive levy.   It charges that the amount of property seized was far beyond the amount of property reasonably necessary to satisfy the plaintiff's execution, and that such excessive levy was knowingly and maliciously made; and it goes into details and shows that the execution was for only $66.25, and that the property seized was worth $500; and, in addition to the actual damages prayed for, the petition asks for a recovery of $500 as exemplary damages.   It sufficiently stated a cause of action for an excessive levy, at least as against a general demurrer, and no other exception was interposed against that part of the petition. Cornelius v. Burford, 28 Texas, 209.   The petition also alleged that the property seized was sold under execution for more than double the amount of the debt, and that the defendants had appropriated such excess.   If it had shown the amount of such excess, a good cause of action would have been disclosed for the recovery thereof.

For the error pointed out, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*